Opinion issued August 22, 2019



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00144-CV

———————————

## IN THE INTEREST OF A.L.P., A CHILD

---

## On Appeal from the 505th District Court
## Fort Bend County, Texas
## Trial Court Case No. 18-DCV-252443

---

## MEMORANDUM OPINION

Appellant Curtis McGuire, proceeding pro se, appeals from the trial court's order terminating his parental rights to A.L.P.  In two issues, McGuire contends that (1) the trial court abused its discretion in denying his motion for a continuance and (2) the evidence is insufficient to support the trial court's finding that terminating his parental rights is in the child's best interest.  We affirm.

**Background**

In 2010, McGuire sexually assaulted his twelve-year old stepdaughter, Anna.[1] The sexual abuse continued for several years. On July 13, 2013, Anna, who was then fifteen years old, gave birth to A.L.P. DNA testing revealed that McGuire is A.L.P.'s father.

On May 7, 2015, McGuire pleaded guilty to, and was convicted of, aggravated sexual assault of a child (Anna) and sexual assault of a child (Anna). The trial court sentenced him to concurrent terms of twenty-three years' and twenty years' imprisonment, respectively.[2]

On June 20, 2018, appellee Casa de Esperanza de los Ninos, Inc. ("Casa")[3] filed its original petition to terminate Anna's and McGuire's parental rights to A.L.P. On October 22, 2018, the parties' counsel and McGuire signed a request for a January 28, 2019 trial setting. The trial court granted the motion.

On October 30, 2018, Anna's attorney moved to withdraw from the case. The motion to withdraw included notice to Anna of the January 28, 2019 trial setting. On November 16, 2018, Casa served requests for admissions and written

---

[1]     Anna is a pseudonym. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b).

[2]     *See* TEX. PENAL CODE §§ 22.021, 22.011.

[3]     Casa is an agency licensed by the Texas Department of Children's Regulatory and Protective Services to place children for adoption.

interrogatories on Anna, and, on November 19, 2018, Casa served a second request for admissions on Anna. On November 26, 2018, the trial court granted Anna's counsel's motion to withdraw. On December 26, 2018, Anna emailed Casa's counsel stating that she no longer resided at her last known address and that she did not have a temporary address to provide. Casa's counsel responded to Anna's email, advising her of the January 28, 2019 trial setting and that she needed to be present at trial.

On January 22, 2019, the trial court held a hearing on Casa's motion to waive mediation and its motion to deem admissions of Anna. McGuire attended the hearing. Casa's counsel informed the trial court that Anna had received notice of the motions via email service at the email address she provided to Casa's counsel on December 26, 2018, Anna had opened both email messages, and Anna had not responded to the discovery requests. The trial court granted Casa's motions.

A bench trial was held on January 28, 2019. At the start of trial, McGuire moved for a continuance based on Anna's failure to appear and his desire to subpoena her. McGuire stated that Anna's testimony was material to prove that it was in A.L.P.'s best interest to maintain a relationship with him. Casa's counsel objected to the motion on the grounds that it was not verified and that Anna had received notice of the trial setting and all other hearings but had chosen not to participate. The court-appointed amicus attorney objected to the motion on the

grounds of lack of notice and that McGuire had had adequate time to subpoena witnesses. The trial court denied McGuire's motion.

Mary Scalise, a Casa caseworker supervisor, testified that the Texas Department of Family and Protective Services ("the Department") removed Anna from her mother's care in July 2013 as a result of McGuire's sexual abuse. The Department placed Anna and A.L.P. in a residential program for teenage mothers in San Antonio, Texas, where they remained until Anna reached the age of majority. On August, 26, 2016, Anna placed A.L.P. into foster care with Casa.

At McGuire's request, Scalise contacted his mother to discuss A.L.P.'s placement. McGuire's mother told Scalise that she represented the family and that she supported A.L.P.'s placement with Casa. No other member of McGuire's family offered to care for A.L.P.

Scalise testified that Anna was very fearful of McGuire. She testified that Anna was so young when she was sexually assaulted, and that she came to Casa "pretty broken" and had no one in her life to support her. She further stated that Anna wants the very best for A.L.P. and told Scalise that she wanted to protect A.L.P. from McGuire. Scalise stated that, in the event that McGuire's parental rights were not terminated, A.L.P.'s safety would be a major concern for Casa and Anna because if McGuire was capable of sexually abusing Anna he might also be capable of abusing A.L.P.

4

Scalise testified that, although McGuire has known that A.L.P. was his child since shortly after her birth in 2013, he did not provide any financial support to Casa for A.L.P.'s care in 2016 or 2017. She stated that he sent three checks totaling $125 to Casa in 2018. Scalise testified that Casa was seeking termination of McGuire's parental rights to A.L.P. based on his convictions for aggravated sexual assault of a child and sexual assault of a child, the endangering environment in which McGuire placed, and will continue to place, A.L.P. if his parental rights are not terminated, and his inability to provide care for A.L.P. due to his incarceration.

A.L.P. currently lives with foster parents who she calls "mommy" and "daddy" and with whom she has spent the majority of her life. Scalise testified that Casa has a placement team that spends time getting to know the children and the foster families in order to match the child with a family. Prior to placement, A.L.P.'s foster parents underwent extensive training with Casa to become certified, and Casa's social worker and psychologist conducted a lengthy home study. Scalise testified that A.L.P. was matched to her foster parents in part because they do not have any other children and could focus solely on A.L.P.'s needs.

Scalise testified that A.L.P. and her foster parents are very attached to one another, and that the foster father works at the same school that A.L.P. attends. A.L.P. has her own room as well as toys and education materials. A.L.P.'s foster parents are prospective adoptive parents, are "one thousand percent" committed to

5

A.L.P., and have the skills and resources needed to care for her. Scalise also stated that the foster parents understand A.L.P.'s "baggage," some of which A.L.P. has already displayed, and they are committed to giving A.L.P. whatever she needs. It was Scalise's opinion that removing A.L.P. from her current foster family would be extremely detrimental to A.L.P.'s well-being.

Scalise testified that McGuire's convictions require him to register as a sex offender upon completion of his incarceration. Scalise believed that it would be difficult on A.L.P. if McGuire continued being a part of her life because his status as a sex offender might affect her ability to have friends around him as well as require her to explain that he should be her grandfather rather than her father.

Scalise testified that Casa received the Department's records, which include the Amarillo Police Department investigation report of the incident leading to McGuire's arrest. The report stated that Anna's mother possibly knew about McGuire's sexual abuse of Anna but that McGuire threatened to kill her if she told anyone. Scalise stated that these allegations confirmed the story that Anna told her when they first met. The report also included statements from the sexual assault nurse examiner who examined Anna that "[Anna] was very frightened by Curtis McGuire and asked questions consistent with that of a victim of domestic violence and of a child in an abusive household. [Anna] was concerned that if Curtis McGuire went to jail, he would lose his job and would not be able to provide for the family."

6

When Scalise contacted the Department investigator in charge of Anna's case, he told her that he continued to receive threatening letters from McGuire. Scalise testified that these were additional reasons that Casa believed it was important to terminate McGuire's parental rights.

McGuire testified that he was married to Anna's mother from 2010 to 2014. He admitted that he began sexually assaulting Anna in 2010 when she was twelve years old, and that he was charged with aggravated sexual assault of a child and sexual assault of a child. McGuire was released on bond and, as a condition of his bond, he was instructed not to have any contact with Anna. He admitted that, despite this condition, he continued to sexually assault Anna. On May 7, 2015, McGuire pleaded guilty to, and was convicted of, the two charged offenses.

McGuire acknowledged that his sexual assault of Anna caused her to be left without a father due to his incarceration and to be removed from her mother's care. McGuire admitted that his conduct, which forced Anna to live on her own with a child, created an endangering situation for Anna and A.L.P. McGuire testified that Anna's mother was a lot older than him and that he "wasn't getting whatever [he] needed with [her]." He testified that he allowed his relationship with Anna to become inappropriate and that it was a "mistake on my part, big time," but he believes that he "has grown a lot" and has "a lot more self-control now." He admitted that he told Anna that if she told anyone about his sexual abuse he would

7

go to jail. McGuire testified that he has sent several support payments for A.L.P. totaling $125.

McGuire testified that he was aware that A.L.P. would have to live with the stigma of being born as a result of his raping her mother. When he was asked whether he had any empathy for the psychological embarrassment the stigma would cause A.L.P., he stated, "I do have some empathy to that effect. I mean, I've been listening. And based on the testimony of Mary Scalise, I think I would be willing to go ahead and just terminate my rights." The trial recessed, and McGuire executed an irrevocable father's affidavit of relinquishment of parental rights. Following the recess, McGuire testified that no one had approached him prior to his decision to relinquish his parental rights to A.L.P., he executed the affidavit of his own volition and signed a proposed decree of termination, and that doing so was in A.L.P.'s best interest.

At the conclusion of trial, the trial court found clear and convincing evidence supporting termination of McGuire's parental rights to A.L.P. under subsections (A), (C), (D), (E), (K), (Q), and (T) of Family Code section 161.001(b)(1) and section 161.007(a), and that termination of McGuire's parental rights was in the best

interest of the child.[4] The court named Casa as A.L.P.'s managing conservator. The trial court signed the decree of termination the same day. This appeal followed.

## Denial of Motion for Continuance

In his first issue, McGuire contends that the trial court abused its discretion in denying his motion for continuance because it deprived him of sufficient time to subpoena Anna to appear for trial.

### A. Standard of Review and Applicable Law

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). The trial court has broad discretion when deciding whether to grant or deny a motion for continuance, and its decision will not be reversed absent a clear abuse of discretion. *See Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986). "A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Joe*, 145 S.W.3d at 161.

A motion for continuance must be verified or supported by an affidavit. TEX. R. CIV. P. 251, 252; *see also Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996). If a motion is not verified or supported by affidavit, we presume that the trial court did not abuse its discretion in denying the motion. *Villegas*, 711

---

[4] The trial court found clear and convincing evidence supporting termination of Anna's parental rights to A.L.P. under subsections (A), (D), and (E), and that termination of her parental rights was in A.L.P.'s best interest.

S.W.2d at 626. The mere absence of a party does not entitle the party to a continuance. *Vickery v. Vickery*, 999 S.W.2d 342, 363 (Tex. 1999); *In re Guardianship of Cantu de Villareal*, 330 S.W.3d 11, 26–27 (Tex. App.—Corpus Christi 2010, no pet.). Further, if the continuance is requested based on the testimony of an absent person, the party applying for the continuance "shall make affidavit that such testimony is material, showing the materiality thereof, and that he has used due diligence to procure such testimony, stating such diligence, and the cause of failure, if known; that such testimony cannot be procured from any other source; [and] the continuance is not sought for delay only, but that justice may be done . . . ." TEX. R. CIV. P. 252; *see also Briscoe v. Goodmark Corp.*, 130 S.W.3d 160, 169 (Tex. App.—El Paso 2003, no pet.).

## B. Analysis

McGuire's motion for continuance was neither verified nor supported by affidavit. *See In re R.F. III*, 423 S.W.3d 486, 490 (Tex. App.—San Antonio 2014, no pet.) (stating trial court is presumed to have correctly exercised its discretion when it denies motion that does not comply with Rule of Civil Procedure 251, including not made in writing, verified, or supported by affidavit). McGuire's motion also failed to address the diligence, if any, he used to obtain Anna's testimony. *See Landers v. State Farm Lloyds*, 257 S.W.3d 740, 747 (Tex. App.—Houston [1st Dist.] 2008, no pet.). The record reflects that Anna did not respond to

10

Casa's written discovery requests, which were due on December 17 and 19, 2018, and that Casa served McGuire with certificates of written discovery confirming the service of discovery requests on Anna, its motion to compel discovery responses from Anna, and Casa's motion to deem requests for admissions from Anna admitted. Despite having notice of Anna's repeated failure to participate in the proceedings, McGuire did nothing to secure her attendance at trial.

We further note that, although a subpoena is not required to secure the appearance of a party at trial, McGuire had adequate time to subpoena Anna's appearance. Either party to a suit shall have the same process to compel an opposing party's attendance as in the case of any other witness. TEX. R. CIV. P. 181; *see also In re B.G.M.*, No. 01-08-00018-CV, 2009 WL 1270231, at *1 n.1 (Tex. App.— Houston [1st Dist.] May 7, 2009, no pet.) (mem. op.) (noting party acting pro se must comply with substantive law and procedural rules). Here, the record shows that McGuire signed the request for the January 28, 2019 trial setting. McGuire was present at the January 22, 2019 pretrial motions hearing during which there was a discussion of Anna's failure to appear at that hearing as well as an earlier hearing on January 14, 2019. At no time prior to trial did McGuire request the issuance of a subpoena to compel Anna's attendance at trial or seek a continuance despite having notice of her repeated failure to appear at hearings or otherwise participate in the proceedings. Additionally, aside from a conclusory assertion that Anna's testimony

11

"will prove the best interest of A.L.P. is for [] McGuire to maintain a relationship with Anna and A.L.P. and his parental rights to A.L.P.," McGuire failed to demonstrate that Anna's testimony was material. *See In re R.F.*, 423 S.W.3d at 492 (concluding that trial court did not abuse discretion in denying trial continuance where counsel failed to file motion for continuance or affidavit or offer of proof indicating that father's testimony was material and that counsel used due diligence to procure father's testimony).

The trial court did not abuse its discretion in denying McGuire's motion for continuance. *See In re B.T.D.*, No. 01-16-00582-CV, 2017 WL 343613, at *6 (Tex. App.—Houston [1st Dist.] Jan. 20, 2017, no pet.) (mem. op.) (concluding that, in absence of written motion that complied with rules of procedure, trial court did not abuse its discretion when it denied father's request for continuance); *In re G.A.H.*, No. 02–11–00015–CV, 2011 WL 4711980, at *4 (Tex. App.—Fort Worth Oct. 6, 2011, no pet.) (mem. op.); *In re C.P.V.Y.*, 315 S.W.3d 260, 270 (Tex. App.—Beaumont 2010, no pet.). Accordingly, we overrule McGuire's first issue.

## Best Interest of the Child

In his second issue, McGuire challenges the trial court's finding that termination of his parental rights is in A.L.P.'s best interest.

## A. Waiver

Texas Rule of Appellate Procedure 38.1(i) requires appellate briefs to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). An appellate issue unsupported by argument or containing an argument lacking citation to the record or legal authority presents nothing for review. *In re B.T.D.*, 2017 WL 343613, at *7; *Arellano v. Magana*, 315 S.W.3d 576, 577 (Tex. App.—El Paso 2010, no pet.) (citing *Republic Underwriters Ins. Co. v. Mex–Tex, Inc.*, 150 S.W.3d 423, 427 (Tex. 2004)). "Bare assertions of error without argument or authority waive error." *In re J.A.M.R.*, 303 S.W.3d 422, 425 (Tex. App.—Dallas 2010, no pet.); *see also In re K.C.B.*, 280 S.W.3d 888, 896 (Tex. App.—Amarillo 2009, pet. denied) (concluding parent waived challenge to sufficiency of evidence on best interest finding in parental termination case due to inadequate briefing).

McGuire has provided no substantive analysis or appropriate citations to authorities and the record to support his challenge to the trial court's best interest finding. His bare assertion that Casa did not prove by clear and convincing evidence that termination of his parental rights is in A.L.P.'s best interest is inadequate and is, therefore, waived. *See Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (noting longstanding rule that point may be waived due to inadequate briefing); *see also In re B.T.D.*, 2017 WL 343613 at *7–8; *In re D.J.W.*,

13

394 S.W.3d 210, 223 (Tex. App.–Houston [1st Dist.] 2012, pet. denied) (holding parent waived challenge to legal and factual sufficiency of evidence supporting trial court's best interest finding where she failed to provide legal argument).

However, even if McGuire had not waived this issue, our review of the record demonstrates that the evidence is sufficient to support the trial court's best interest finding.

## B. Burden of Proof and Standard of Review

Protection of the best interest of the child is the primary focus of the termination proceeding in the trial court and our appellate review. *See In re A.V.*, 113 S .W.3d 355, 361 (Tex. 2003). A parent's rights to the "companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). Accordingly, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).

In a case to terminate parental rights under Texas Family Code section 161.001, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination and (2) termination is in the best interest of the child. TEX. FAM. CODE § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that

will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007; *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d at 362.

When reviewing the legal sufficiency of the evidence in a case involving termination of parental rights, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that there existed grounds for termination under section 161.001(b)(1) and that termination was in the best interest of the child. *See* TEX. FAM. CODE § 161.001(b)(1), (2); *In re J.F.C.*, 96 S.W.3d at 266. In doing so, we examine all evidence in the light most favorable to the finding, assuming that the "factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* We must also disregard all evidence that the factfinder could have reasonably disbelieved or found to be incredible. *Id.*

When conducting a factual sufficiency review, we consider and weigh all of the evidence including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then

15

the evidence is factually insufficient." *Id.* We give due deference to the factfinder's findings and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

## C. Applicable Law

There is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE § 263.307(a).

Courts may consider the following non-exclusive factors in reviewing the sufficiency of the evidence to support the best interest finding: the desires of the child; the present and future physical and emotional needs of the child; the present and future emotional and physical danger to the child; the parental abilities of the persons seeking custody; the programs available to assist those persons seeking custody in promoting the best interest of the child; the plans for the child by the individuals or agency seeking custody; the stability of the home or proposed placement; acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–372 (Tex. 1976). This list of factors is not exhaustive, however, and evidence is not required on all of the factors

to support a finding that terminating a parent's rights is in the child's best interest. *Id.*; *In re D.R.A.*, 374 S.W.3d at 533. Moreover, we note that evidence supporting termination under one of the grounds listed in section 161.001(b)(1) can also be considered in support of a finding that termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding same evidence may be probative of both section 161.001(1) grounds and best interest).

In addition, the Texas Family Code sets out factors to be considered in evaluating the parent's willingness and ability to provide the child with a safe environment, including: the child's age and physical and mental vulnerabilities; whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; whether the child's family demonstrates adequate parenting skills, including providing the child with minimally adequate health and nutritional care, a safe physical home environment, and an understanding of the child's needs and capabilities; and whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE § 263.307(b); *R.R.*, 209 S.W.3d at 116.

17

**D.     Analysis**

As an initial matter, we note that McGuire voluntarily executed an irrevocable affidavit of relinquishment of his parental rights to A.L.P.   An affidavit of relinquishment of parental rights, in and of itself, can provide sufficient evidence that termination is in the child's best interest. *In re K.S.L.*, 538 S.W.3d 107, 111–12 (Tex. 2017) ("A parent's willingness to voluntarily give up her child, and to swear affirmatively that this is in her child's best interest, is sufficient, absent unusual or extenuating circumstances, to produce a firm belief or conviction that the child's best interest is served by termination.").   Once it is established by clear and convincing evidence that an affidavit of relinquishment was properly executed, the affidavit may only be set aside upon a finding, by a preponderance of the evidence, that it was procured by coercion, duress, fraud, deception, undue influence, or overreaching. *S.H. v. Tex. Dep't of Family & Protective Servs.*, No. 03-13-00151-CV, 2013 WL 3013874, at *2 (Tex. App.—Austin June 12, 2013, no pet.) (mem. op.).

At trial, McGuire testified that, after listening to Scalise's testimony, he was willing to terminate his parental rights to A.L.P.  During a recess, McGuire executed an irrevocable father's affidavit of relinquishment of parental rights, which stated, in relevant part:

> I freely, voluntarily, and permanently give and relinquish to **CASA DE ESPERANZZA DE LOS NINOS, INC.** all of my parental rights,

18

privileges, powers, and duties. I consent to the placement of my child for adoption by this agency. . . . I want **CASA DE ESPERANZA DE LOS NINOS, INC.** to present this Affidavit of Relinquishment of Parental Rights to the Court and tell the Judge this affidavit speaks for me. . . . Termination of the parent-child relationship between me and my child so that the child may be placed for adoption and adopted is in the best interest of the child.

McGuire initialed each line of the following paragraph, printed in bold capital letters:

**I REALIZE THAT I SHOULD NOT SIGN THIS AFFIDAVIT UNTIL I HAVE READ AND UNDERSTOOD EACH WORD, SENTENCE, AND PARAGRAPH IN IT. I REALIZE THAT I SHOULD NOT SIGN THIS AFFIDAVIT OF RELINQUISHMENT IF THERE IS ANY THOUGHT IN MY MIND THAT I MIGHT SOMEDAY SEEK TO CHANGE MY MIND. I REALIZE THAT I SHOULD NOT SIGN THIS AFFIDAVIT OF RELINQUISHMENT IF I AM NOT THINKING CLEARLY BECAUSE OF ILLNESS, MEDICATION, MY EMOTIONAL STATE, OR ANY OTHER REASON. BECAUSE I REALIZE HOW IMPORTANT THIS DECISION IS FOR THE FUTURE OF MY CHILD, I HAVE PUT MY INITIALS BESIDE EVERY LINE OF THIS PARAGRAPH SO THAT IT WILL ALWAYS BE UNDERSTOOD THAT I HAVE READ THIS AFFIDAVIT OF RELINQUISHMENT, UNDERSTAND IT, AND DESIRE TO SIGN IT.**

Following the recess, McGuire testified that no one had approached him about relinquishing his parental rights to A.L.P., that he had executed the affidavit of his own volition and signed a proposed decree of termination, and that doing so was in A.L.P.'s best interest. At the conclusion of trial, the trial court read into the record the grounds upon which McGuire's parental rights to A.L.P. were terminated, including his execution of the irrevocable affidavit of relinquishment of parental

19

rights, confirmed that McGuire signed the affidavit of his own volition, and found that termination of the relationship between McGuire and A.L.P. was in the child's best interest. McGuire's sworn, voluntary, and knowing affidavit, in which he expressly attests that termination of his parental rights is in A.L.P.'s best interest, satisfies the requirements that the trial court's best interest finding be supported by clear and convincing evidence. *In re K.S.L.*, 538 S.W.3d at 112.

In a single sentence under the "Summary of the Argument" portion of his brief, McGuire states: "Given the factors stated respondent was under coercion and duress in signing irrevocable affidavit of relinquishment of parental rights." McGuire provides no argument, authority, or citation to the record to support his contention and has, therefore, waived his complaint.[5] *See* TEX. R. APP. P. 38.1(i); *In re B.T.D.*, 2017 WL 343613, at *7; *In re D.J.W.*, 394 S.W.3d at 223.

There is also legally and factually sufficient evidence to support the trial court's best interest finding beyond the affidavit of relinquishment alone.

---

[5] In his brief, McGuire states: "Here, the record shows [Anna] under coercion and duress because of her relationship with boyfriend Adam Owenby." In support of his assertion, McGuire cites a portion of the reporter's record discussing allegations that Owenby was mentally and physically abusive to Anna and that he threatened to have A.L.P. taken from her permanently. It is unclear how this evidence relates, if at all, to McGuire's assertion that he was coerced or under duress to sign the affidavit of relinquishment, and McGuire does not make this argument.

### 1. Desires of the Child

When, as here, the child is too young to express her desires, the factfinder may consider whether the child has bonded with the proposed adoptive family, is well-cared for by them, and whether the child has spent minimal time with a parent. *See In re S.R.*, 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *In re T.G.R.-M.*, 404 S.W.3d 7, 16 (Tex. App.—Houston [1st Dist.] 2013, no pet.). The trial court heard evidence that A.L.P. currently lives with foster parents with whom she has spent the majority of her life and to whom she is very attached. The evidence established that her foster parents are prospective adoptive parents, they have the skills and resources needed to care for A.L.P., and they understand A.L.P.'s "baggage" and are committed to giving A.L.P. whatever she needs. Scalise also testified that A.L.P. does not know who McGuire is.

### 2. Present and Future Physical and Emotional Needs of the Child

A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in a best interest determination. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). Without stability, income, or home, a parent is unable to provide for a child's emotional and physical needs. *A.S. v. Tex. Dep't of Family & Protective Servs.*, 394 S.W.3d 703, 714 (Tex. App.—El Paso 2012, no pet.). Therefore,

21

evidence about the present and future placement of the child is relevant to the best interest determination. *See In re C.H.*, 89 S.W.3d at 28.

There is no evidence in the record that McGuire provided any support to Anna during her pregnancy or at any time before A.L.P.'s placement with Casa. The record reflects that McGuire sent three checks totaling $125 to Casa in 2018 but has sent no support since. McGuire offered no evidence of any effort to arrange care for A.L.P. during his incarceration. Scalise testified that the only request he made was that Casa contact his mother. Upon doing so, McGuire's mother said she supported A.L.P.'s placement with Casa. *See id.* (finding undisputed evidence established not only that father was unable to care for child from prison but that he also exhibited pattern of conduct inimical to child rearing, including lack of emotional or financial assistance to child after his birth, extensive criminal history, and no concrete plan to provide emotional or physical care for child); *In re J.L.M.*, No. 01-16-00445-CV, 2016 WL 6754779, at *9 (Tex. App.—Houston [1st Dist.] Nov. 15, 2016, no pet.) (mem. op.).

While there is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship, the focus is on the best interest of the child, not the parent. *See In re A.S.*, 394 S.W.3d at 714–15. Additionally, while not dispositive, a parent's current and future incarceration at the time of trial is relevant to that parent's ability to meet the child's present and future physical and

22

emotional needs. *See In re C.T.E.*, 95 S.W.3d 462, 466 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *see also In re J.G.S.*, 550 S.W.3d 698, 706 (Tex. App.—El Paso 2018, no pet.). "[A] parent's incarceration at the time of trial makes the child's future uncertain." *Id.* McGuire is currently serving concurrent twenty year and twenty-three year sentences as a result of his sexual abuse of Anna. Casa introduced evidence showing that McGuire is eligible for parole on January 7, 2026, but that should he serve his entire sentence, he will be released on July 8, 2036, after A.L.P. will have reached the age of majority.

McGuire's lack of support of A.L.P., lack of effort to arrange care for A.L.P. during his incarceration, and his incarceration established that he is unable to meet A.L.P.'s emotional or physical needs, presently or in the future. *See In re C.A.J.*, 122 S.W.3d 888, 893–94 (Tex. App.—Fort Worth 2003, no pet.); *In re S.M.L.*, 171 S.W.3d 472, 479 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

### 3. Present and Future Physical and Emotional Danger to the Child and Parent's Acts or Omissions

A parent's sexual abuse of a child is a relevant consideration in deciding if the parent poses a danger to the physical and emotional well-being of his own child. *In re S.G.*, No. 01-18-000728-CV, 2019 WL 1448870, at *9 (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, no pet. h.) (mem. op.). The undisputed evidence established that McGuire began sexually assaulting Anna, his stepdaughter, when she was twelve years old, and that the sexual assault resulted in Anna becoming pregnant

23

with A.L.P. when she was fifteen years old. As a result, McGuire was convicted of aggravated sexual assault of a child and sexual assault of a child for which he is serving concurrent twenty year and twenty-three year sentences. McGuire's convictions require him to register as a sex offender for the rest of his life. *See* TEX. CODE CRIM. PROC. art. 62.001(6)(A), 62.101(a)(1). In requiring lifetime registration, the Legislature has made a policy decision that the crime for which McGuire was convicted will never be so remote that it will no longer be a matter of legitimate public concern. *See In re S.G.*, 2019 WL 1448870, at \*9 (citing *Young v. State*, 341 S.W.3d 417, 426 (Tex. Crim. App. 2011) (recognizing concern about repeat sex offenses and desire to thwart future sex crimes underlies registration requirement)).

Scalise testified that if McGuire remained a part of A.L.P.'s life, his status as a sex offender would be difficult on A.L.P. because it might affect her ability to have friends around him and require her to explain that he should be her grandfather rather than her father. McGuire testified that he was aware that A.L.P. would have to live with the social stigma and psychological embarrassment of being born as a result of her father raping her mother. *See In re S.G.*, 2019 WL 1448870, at \*9 (concluding that evidence was sufficient to support finding that termination of father's parental rights was in son's best interest where father was convicted of aggravated sexual assault of thirteen-year old child when father was twenty years

24

old, father was lifetime registered sex offender as result, son had never been in father's care, father did not pay child support, and father did not play active role in son's life); *In re G.M.G.*, 444 S.W.3d 46, 60 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (considering father's conviction for offense of sexual assault in best interest analysis). Although he admitted that he sexually abused Anna, McGuire testified that he made a mistake and has grown a lot since then. The factfinder, however, was free to disbelieve him based on its assessment of his demeanor and credibility and conclude that he posed a danger to A.L.P.'s emotional or physical well-being. *See J.O.A.*, 283 S.W.3d at 346; *see also In re R.W.*, 129 S.W.3d 732, 743 (Tex. App.—Fort Worth 2004, pet. denied) (concluding evidence of father's past inappropriate sexual relationship with sixteen-year old girl relevant to factfinder's decision as to whether he posed danger to child).

### 4. Plans for the Child and Stability of Home or Proposed Placement

As discussed above, McGuire offered no evidence of any concrete plan to care for A.L.P. during his incarceration. Upon McGuire's request, Scalise spoke with his mother who told Scalise that she supported A.L.P.'s placement with Casa. Scalise testified that no one came forward to volunteer to take care of A.L.P. during McGuire's incarceration, and McGuire identified no other potential caregiver for A.L.P. *In re C.H.*, 89 S.W.3d at 28.

Scalise testified that A.L.P. currently lives with foster parents with whom she has spent the majority of her life. A.L.P. was matched to her foster parents in part because they do not have any other children and could focus solely on A.L.P.'s needs. A.L.P.'s foster father works at the same school that A.L.P. attends. Scalise testified that A.L.P. is very bonded to her foster parents, whom she calls "mommy" and "daddy," and that the foster parents are very devoted to A.L.P. A.L.P has her own room as well as toys and education materials. A.L.P.'s foster parents are also prospective adoptive parents and have the skills and resources needed to care for her. Scalise also stated that the foster parents understand A.L.P.'s "baggage," some of which A.L.P. has already displayed, and that they are committed to giving A.L.P. whatever she needs. It was Scalise's opinion that removing A.L.P. from her current foster family would be extremely detrimental to A.L.P.'s well-being. Scalise also testified that A.L.P. does not know who McGuire is.

Viewing all the evidence in the light most favorable to the judgment, we conclude that a factfinder could have formed a firm belief or conviction that termination of McGuire's parental rights is in A.L.P.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 265–66. In light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the best interest finding is not so significant that a factfinder could not reasonably have formed a firm belief or conviction that termination of McGuire's parental rights is in A.L.P.'s best interest.

26

*See In re H.R.M.*, 209 S.W.3d at 108. After considering the relevant factors under the appropriate standards of review, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination of the parent-child relationship is in the best interest of the child. Accordingly, we overrule McGuire's second issue.

## Conclusion

We affirm the trial court's judgment.


Russell Lloyd
Justice

Panel consists of Justices Lloyd, Goodman, and Landau.